SEXTON, Judge.
Aetna Business Credit appeals a trial court judgment sustaining the defendant’s motion for summary judgment, thereby upholding the defendant’s vendor’s privilege. We affirm.
The facts of the case are not in dispute. In March 1979, Irving Leasing Corporation owned two drilling rigs and accessory equipment including a Gardner Denver PY-7 Triplex Pump. To finance the pur *1305 chase of this equipment, Irving Leasing Corporation borrowed from Aetna Business Credit Corporation and then secured the loan with a chattel mortgage on all the equipment. The chattel mortgage was duly recorded.
Irving Leasing Corporation, which is in the business of leasing drilling equipment, leased the rigs along with various equipment including the Gardner Denver pump to Ram Drilling Company, a Louisiana corporation engaged in the drilling of oil wells. Some eight months later, while drilling a well in De Soto Parish, Ram entered into an agreement on November 20, 1979, with the defendant for the purchase of a Model D353 Caterpillar engine to be used to power the Gardner Denver pump. This engine was a replacement for the engine contained on the pump at the time of lease. The new engine was mounted on the drilling platform upon which the pump was also mounted. The engine was then connected to the pump by a specially built drive device which Ram had fabricated for this purpose.
Ram’s financial condition worsened and on February 6, 1980, the Caterpillar engine was repossessed by the defendant due to Ram’s inability to pay. Ram acquiesced in the repossession.
After the defendant had repossessed the Caterpillar engine, the plaintiff filed suit against Irving and foreclosed on the two rigs and equipment including the Gardner Denver pump.
Plaintiff subsequently purchased this equipment at public auction. Plaintiff then filed this suit, claiming that the Caterpillar engine had, by the law of accession, become attached to the pump and/or rig in such a manner as to become the property of Irving Leasing Corporation and thus subject to the chattel mortgage executed by Irving. If not, then defendant’s vendor’s privilege is valid.
The trial court in considering defendant’s motion for summary judgment described the “attachment” or “connection” of the Caterpillar engine and Gardner Denver pump as follows:
“. . . the engine was attached to its own I-beam skid by eight bolts; and the skid was in turn bolted to a flat metal floor, upon which the pump was also affixed. This whole assembly of equipment, at the time of repossession, was sitting on the ground next to the drilling rig. Two rubber hoses supplied fuel to the engine. The drive assembly used consisted of two concentric drums; one was a small drum bolted to the flywheel of the engine and the other was a larger drum attached to the pump. The smaller drum fit inside the larger one without making any physical contact. Power from the engine was transferred to the pump when an ‘air clutch’ or innertube was inflated between the two drums. Only when this device was inflated could the power from the engine be transferred to the pump by transferring motion from the small drum to the large drum. To remove the engine required only the disconnection of the two fuel lines, removal of the bolts from the skid and disconnection of the small concentric drum from the engine flywheel.”
The trial judge found that defendant was easily able to remove the engine without damage to the pump, the drive device, or the engine itself. The trial court held that, “a complete piece of machinery such as this engine does not become merged with a pump simply by being mounted upon the same rack, or connected to a drive device of the type used here.”
Plaintiff-appellant relies upon Roberts v. Williams, 99 So.2d 392 (La.App.2d Cir. 1957); McVay v. McVay, 318 So.2d 660 (La.App.3d Cir. 1975); Guaranty Bank and Trust Company v. Hoggins, 347 So.2d 919 (La.App.3d Cir. 1977) and General Motors Acceptance Corporation v. Madden, 331 So.2d 882 (La.App.2d Cir. 1976). These are all “automobile cases” in which the owner of an automobile authorized the replacement of parts necessary for the continued functioning of the vehicle. These parts included an engine, universal joints, and tires. These cases are prior to the reorganization of law in this area, but as the redactor’s comments note, no change was made in the *1306 law of accession between movables.[1] In each case it was found that when the parts were bolted on or otherwise affixed to the vehicle the parts became incorporated into the vehicle, and the law of accession was held to apply. In other words, the parts ceased to have an individual identity, but rather became part of the greater whole.
In this case Ram was only a lessee of the rig and pump. It was the owner of the engine, indicating an intent on Ram’s part that any “attachment” of the Caterpillar engine and the Gardner Denver pump was temporary, lasting only as long as the lease was in effect.
The general principle of accession is defined in LSA — C.C. Art. 482:
“The ownership of a thing includes by accession the ownership of everything that it produces or is united with it, either naturally or artificially, in accordance with the following provisions.” (Emphasis added).
LSA-C.C. Art. 510 carries forward this concept of a union in defining accession between movables:
“When two corporeal movables are united to form a whole, and one of them is an accessory of the other, the whole belongs to the owner of the principal thing...” (Emphasis added).
Therefore ownership of movables by accession requires a permanent union between the things which, of course, must be determined on the facts of each case.
Automobile parts are designed to become united with an automobile. Thus there is a distinct difference between the replacement of universal joints and automobile engines and this case. Also, in McVay, supra, “the tire case”, although the tires could be easily removed, they were united with the automobile as an accessory in a permanent sense. See LSA-C.C. Art. 508.
In this case the attachment of this engine by the drive device and the fuel hose connections are of such a nature that each machine retains its separate identity. The requirement that movables must be “united to form a whole” requires something more permanent than the easily removable drive device which connected this pump and engine. We view the union here as temporary and tenuous rather than permanent.
We agree with the trial court’s finding that due to the various uses of the engine, its characteristics, and the ease of disconnection it remained a distinct piece of machinery so that the law of accession does not apply. Therefore, plaintiff’s chattel mortgage is inapplicable to the engine, and the defendant’s vendor’s privilege is valid.
For the reasons assigned, the trial court judgment is affirmed at plaintiff-appellant’s costs.
Affirmed.

. Act No. 180 of 1979 and the comments to LSA-C.C. Arts. 477 et seq.